UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                           Case No. 8:23-cr-151-CEH-JSS

DEMPSEY EMMANUEL GILMORE

_____/

**DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON HIS MOTION TO DISMISS: CHALLENGE TO THE CONSTITUTIONALITY OF 18 U.S.C. § 115(a)(1)(B)**

**NOW COMES** Defendant, Dempsey Emmanuel Gilmore, by and through undersigned counsel, and objects to the magistrate judge's report and recommendation (Doc. 32) to his motion to dismiss (Doc. 27), under Fed. R. Crim. P. 59(b)(2).

**MEMORANDUM OF LAW**

**BACKGROUND**

Mr. Gilmore moved to dismiss the indictment, challenging the constitutionality of the statute under which he is charged, 18 U.S.C. § 115(a)(1)(B). Mr. Gilmore argues that, under *Counterman v. Colorado*, 143 S. Ct. 2106, 2111 (2023), the First Amendment's "true threats" exception requires the Government to prove the defendant's subjective mental state as to the threatening nature of the communication, an element lacking from § 115(a)(1)(B). The magistrate judge filed

a report recommending that the motion be denied. The report and recommendation makes two important findings.

First, the report and recommendation asserts that *Counterman* is inapplicable to this case because, there, at issue was a Colorado statute that lacked any mens rea requirement, while the statute here requires the Government to prove that the defendant acted "with intent to impede, intimidate, or interfere with" the victim or "with intent to retaliate against [the victim] on account of the performance of official duties." Doc. 32 at 4 (citing 18 U.S.C. § 115(a)(1)(B)). Second, the report and recommendation finds that the indictment alleges that Mr. Gilmore threatened the victim "willfully and knowingly." *Id.* at 3.

## ARGUMENT

*Counterman* does not simply require that the statute have *some* mens rea requirement, it requires a *certain* mens rea: that the defendant had "some subjective understanding *of the threatening nature of his statements*." *See Counterman*, 143 S. Ct. at 2111 (emphasis added). Further, the "willfully and knowingly" language found in the indictment is nowhere to be found in the statute. The Government may not re-write a statute in its indictment to save the statute from constitutional infirmity. Accordingly, this Court should decline to adopt the report and recommendation and grant Mr. Gilmore's motion.

**I.** ***Counterman*** **requires an intentional, knowing, or reckless mental state as to the threatening nature of the communication.**

"[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002). Because of this, the Constitution "demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality." *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 660 (2004). Content-based restrictions on speech are generally permitted only when limited to the few "'historic and traditional categories long familiar to the bar.'" *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Simon & Schuster Inc. v. Members of N.Y. State Victims Bd.*, 502 U.S. 105, 127 (1991) (Kennedy, J., concurring in judgment)).

One such historically unprotected category is "true threats." *Counterman*, 143 S. Ct. at 2114. "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Id*. (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). At issue in *Counterman* was "whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements." *Id*. at 2111. The Court answered the question in the affirmative, "holding that the State must prove in true-threats cases that the defendant had some understanding *of his statements' threatening character*." *Id*. at 2113

3

(emphasis added).¹ Thus, *Counterman* did not hold that any mens rea at all will suffice; it held that the statute must require proof of the defendant's subjective understanding of his statements' threatening character. Suppose a statute prohibited the making of a statement that is objectively threatening, done with the specific intent to "embarrass or humiliate" the object of the threat. Such a statute would violate the First Amendment under *Counterman*: while it includes a mens rea requirement, the mens rea requirement does not ensure that the defendant had "some understanding of his statements' threatening character." *See id*.

Here, § 115(a)(1)(B) expressly provides for a mens rea requirement, but a requirement other than the defendant's understanding of his statements' threatening character. Because of this, the statute is unconstitutional under *Counterman*. The statute provides:

> (1) Whoever – . . .
>
> (B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under [§ 1114]
>
> *with intent to impede, intimidate, or interfere with* such official, judge, or law enforcement officer while engaged in the performance of official duties, or *with intent to retaliate*

---

¹ Also at issue in *Counterman* was what degree of mens rea is necessary, that is, whether recklessness suffices, or whether the Government must prove knowing or purposeful conduct. The Court held that recklessness suffices. *See id*. at 2117-2118.

> against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115(a) (emphases added).  The statute permits conviction on several alternative mens rea showings.  Proof of an intent to impede will do, as will proof of an intent to interfere, intimidate, or retaliate.  But *Counterman* requires proof of the defendant's subjective understanding of the threatening nature of his statements.  No such requirement appears in § 115.  The statute is therefore unconstitutional.[2]

The fatal difference between the *Counterman* requirement and § 115's mens rea element is helpfully illustrated by the Supreme Court's decision in *Elonis v. United States*, 575 U.S. 723 (2015).  There, the defendant posted violent rap lyrics about his estranged wife and others to his Facebook page.  The lyrics were disturbing, but the defendant interspersed disclaimers that they were "fictitious" and made with no intentional resemblance to real people, and explained that his lyrics were "therapeutic" and merely intended to push the boundaries of art.  *Id*. at 727-28.  After an FBI agent visited him about the lyrics, the defendant made a post called

---

[2] The report and recommendation places no special weight on § 115's "intent to intimidate" alternative, considering the four mens rea alternatives collectively to satisfy *Counterman*.  While a solitary intent-to-intimidate element might pass muster under *Counterman*, as Mr. Gilmore explained in his motion, § 115's use of four alternative mental states, three of which do not satisfy *Counterman*, fails to ensure that the grand or petit jurors have agreed on a constitutionally permissible mental state.  *See* Doc. 27 at 6-8.

5

"Little Agent Lady," in which he re-imagined the encounter ending violently. *Id*. at 730-31.

At trial, the defendant requested an instruction that the government must prove that he subjectively intended to communicate a true threat, but the district court provided an objective instruction whereby the jury could convict so long as a reasonable person would find the posts threatening. *Id*. at 731. The government emphasized at closing argument that the defendant's subjective intent was irrelevant, arguing that "it doesn't matter what he thinks." *Id*. at 732. The jury convicted, and on appeal the defendant argued that the district court's instruction was error. The Supreme Court agreed, resolving the case on statutory grounds and without deciding the constitutional question of what the First Amendment requires – the question the Court would go on to resolve in *Counterman*.

The statute at issue in *Elonis* was not § 115, and the case was resolved on statutory grounds, so the legal issues are not the same as in this case. Nonetheless, *Elonis* helps explain why the reasoning in the report and recommendation in this case is wrong. If Mr. Elonis had been charged under § 115 for "Little Agent Lady," the jury would have been invited to convict if it found that the post was made with intent to "retaliate." The jury could have quite easily concluded that, even if the post was an expressly fictional and therapeutic exercise, and even if Mr. Elonis did not believe anyone would take it seriously, the lyrics nonetheless fell within the scope of the

6

statute – these fictional musings were uttered with intent to "retaliate" against the FBI agent. But *Counterman* drew the First Amendment line not at an intent to "retaliate" or some other ill (and ill-defined) intent, but instead at the defendant's subjective understanding of the threatening nature of his statements. *See Counterman*, 143 S. Ct. at 2113. Under *Counterman*, Mr. Elonis could be convicted for "Little Agent Lady" if he was reckless about whether others would view the post as genuinely threatening. But he may not be convicted simply because he harbored some other intent for the post, such as an intent to "retaliate."

So too, here. While § 115 provides four alternative mental states to satisfy its mens rea element, it does not require the Government to prove the defendant's subjective understanding of his statements' threatening nature. But under *Counterman*, not just any mental state will do: the statute violates the First Amendment unless it requires a showing of at least recklessness as to the statements' threatening nature. As applied here, § 115 has no such requirement, so the prosecution is unconstitutional.

## II. The Government may not re-write the statute in the language of the indictment.

To be sure, as the report and recommendation points out, the Government added the words "willfully and knowingly" to the indictment. Doc. 32 at 3. This surplusage does not save the indictment from being unconstitutional under

7

*Counterman* because surplusage is meaningless. "[P]arts of the indictment unnecessary to and independent of the statutory offense, including language that purports to require a higher mens rea than the statute," are "'mere surplusage.'" *United States v. Phillips*, 4 F.4th 1171, 1176 (11th Cir. 2021) (quoting *United States v. Amede*, 977 F.3d 1086, 1100 (11th Cir. 2020)). And, as the court explained at length in *Phillips*, surplusage is meaningless:

> Phillips contends that the district court violated his Fifth Amendment rights when it instructed the jury that it need not find that he knew his victim's age to find him guilty. He maintains that knowledge of his victim's age was an element of his indictment, so the district court's instruction impermissibly amended the indictment when it broadened the potential bases for conviction. But just because the indictment included the phrase "knowingly and intentionally" does not mean that the government charged Phillips with knowing his victim's age. Section 2251(a) [of Title 18, U.S. Code,] does not require knowledge of age; his indictment, read in light of the statute, did not either. And because Phillips's indictment did not charge him with knowing his victim's age, the district court's jury instruction amended nothing at all.
>
> . . .
>
> We clarified in a recent case, *United States v. Amede*, that language in an indictment that goes beyond what the statute requires ordinarily does not become part of the charged crime. 977 F.3d at 1100. In fact, a district court can ignore parts of the indictment unnecessary to and independent of the statutory offense, including language that purports to require a higher mens rea than the statute. *Id*.; *see also United States v. Miller* 471 U.S. 130, 136 (1985). In *Amede*, for example, the indictment stated that the

8

> defendant "willfully" committed a crime. 977 F.3d at 1098. Willfulness was not an element of the relevant statutory offenses. *Id*. at 1099. Noting that, we concluded that the indictment's inclusion of the word "willfully" was "mere surplusage" that a court could delete without error. *Id*. at 1100. So when the district court omitted the word "willfully" from the jury instructions, it did not constructively amend the indictment – neither the indictment nor the statute required this element to convict. *Id*.
>
> The same is true here. To start, knowledge of a victim's age is not an element of the offenses in § 2251. Period. *United States v. Deverso*, 518 F.3d 1250, 1257 (11th Cir. 2008). Given that, the government did not need to prove that Phillips knew his victim's age to obtain a conviction under § 2251(a). *Amede*, 977 F.3d at 1100. As we just explained, an extra mens rea term in an indictment ordinarily does not become part of the charged crime, and can be ignored without error. *Id*.
>
> In fact, we have already considered – and rejected – an argument much like the one raised here. In *Deverso*, the government charged that the defendant "knowingly" violated § 2251. 518 F.3d at 1257. Because of that, the defendant contended that he was entitled to argue to the jury that he was mistaken about the age of his victim. *Id*. We rejected his argument, explaining that "Congress defines the elements of an offense, not the charging document." *Id*. at 1258 n.2. The addition of the word "knowingly" to an indictment charging a violation of § 2251 does not create a new element of the offense. *Id*.

*Id*. at 1175-76.

Here, as in *Phillips*, *Amede*, and *Deverso*, the Government's "willfully and knowingly" language is meaningless surplusage. "To start," knowledge of the

9

threatening nature of the communication "is not an element of the offense[]" in § 115. *See id.* at 1176. Section 115(a)(1) expressly provides for four alternative mental states in its plain language, and omits any mention of the defendant's subjective awareness of the statement's threatening nature. The omission of any mens rea as to the threatening nature of the statement, and express inclusion of a different set of mens rea requirements, is clear evidence that Congress did not intend to require the government to prove the defendant's subjective awareness of the threatening nature of his statements. *See United States v. Koonce*, 991 F.2d 693, 698 (11th Cir. 1993) (citations omitted) ("The canon of statutory construction that the inclusion of one implies the exclusion of others is well-established."). Section 115 is a specific intent crime in its express mens rea element, but is a general intent crime as to all other elements, including the threatening nature of the communication. *See United States v. Berki*, 936 F.2d 529, 532 (11th Cir. 1991) (holding the government need not prove the defendant's knowledge of the victim's status in a § 115 prosecution). Thus, as is *Phillips*, *Amede*, and *Deverso*, the Government's "willfully and knowingly" allegation is "unnecessary to and independent of the statutory offense," and so is "mere surplusage." *See Phillips*, 4 F.4th at 1176.

Because this language is surplusage, it "does not become part of the charged crime" and "can be ignored without error." *See id.* (citations omitted). As in *Phillips*, the Government's "extra mens rea term" is "nothing at all." *See id.* Language that

10

can be ignored, that is not part of the charged crime, and that is "nothing at all" cannot save a statute from constitutional infirmity. Instead, as charged in this indictment, § 115(a)(1)(B) is unconstitutional as applied under *Counterman*. This Court should therefore decline to adopt the report and recommendation, and instead should dismiss the indictment.

WHEREFORE Defendant, Mr. Gilmore, prays this Court will dismiss the indictment.

DATED this 25th day of August 2023.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s Samuel E. Landes*
Samuel E. Landes, Esq.
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Email: Samuel_Landes@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th of August 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to AUSA John Cannizzaro.

/s *Samuel E. Landes*
Samuel E. Landes, Esq.
Assistant Federal Defender