**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

v.  CASE NO: 8:23-cr-151-CEH-JSS

DEMPSEY EMMANUEL
GILMORE

_____/

**ORDER**

This cause comes before the Court on the Report and Recommendation (Doc. 32), issued by Magistrate Judge Julie S. Sneed. In the Report and Recommendation, Magistrate Judge Sneed recommends Defendant Dempsey Emmanuel Gilmore's ("Defendant" or "Gilmore") Motion to Dismiss: Challenge to the Constitutionality of 18 U.S.C. § 115(a)(1)(B) (Doc. 27) be denied. All parties were furnished copies of the Report and Recommendation and were afforded the opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). On August 25, 2023, Gilmore filed his "Objections to the Magistrate Judge's Report and Recommendation on his Motion to Dismiss: Challenge to the Constitutionality of 18 U.S.C. § 115(a)(1)(B)." Doc. 37. On September 8, 2023, the United States filed its opposition to Gilmore's objections. Doc. 39. The Court heard argument on the motion on January 4, 2024. Upon consideration of the Report and Recommendation, the objections, the opposition to the objections, argument of counsel, and upon this Court's independent examination of the file, it is determined that the Objections should be overruled, the Report and Recommendation adopted, and the Defendant's Motion to Dismiss denied.

I. **BACKGROUND**

A May 3, 2023, indictment charged Gilmore with "threaten[ing] to murder a Federal law enforcement officer, with intent to impede, intimidate, and interfere with such law enforcement officer while engaged in the performance of official duties, and with intent to retaliate against such law enforcement officer on account of the performance of official duties" in violation of 18 U.S.C. § 115(a)(1)(B). Doc. 1. The charges arose after Gilmore allegedly made threats directed at an Assistant United States Attorney in open court on March 9, 2023, after he was found guilty by a jury. Doc. 30-1. Specifically, it is alleged that as Gilmore was being escorted out of the courtroom by U.S. Marshals, he yelled at the AUSA "I am going to have you killed." *Id.*

    A. *Defendant's Motion to Dismiss: Challenge to Constitutionality of 18 U.S.C. § 115(a)(1)(B) (Doc. 27)*

In his motion to dismiss, Gilmore argues that 18 U.S.C. § 115(a)(1)(B), the statute under which he was charged, is unconstitutional as applied to the facts of this case. Doc. 27 at 1. Gilmore relies on the Supreme Court's recent decision in *Counterman v. Colorado*, relating to "true threats," which are "serious expression[s] conveying that a speaker means to commit an act of unlawful violence." 600 U.S. 66, 69, 74 (2023) (quotations and internal citations omitted). *Counterman* holds that in true-threat cases "the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements." *Id.* at 69. This understanding, said the Court, must satisfy a *mens rea* of "recklessness," which the

2

Court explained means that "a speaker is aware that others could regard his statements as threatening violence and delivers them anyway." *Id.* at 79 (quotations and internal citations omitted). The statute at issue here, 18 U.S.C. § 115(a)(1)(B), provides:

> (a)(1) Whoever -- . . .
>
> (B) *threatens* to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,
>
> *with intent to impede, intimidate, or interfere* with such official, judge, or law enforcement officer while engaged in the performance of official duties, *or with intent to retaliate* against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115(a)(1)(B) (emphases added). Gilmore argues that the statute is unconstitutional as applied to him because "the statute fails to require an intent *to threaten*" but instead "permits conviction upon proof of the defendant's intent to impede, interfere, or retaliate." Doc. 27 at 5. As a remedy, Gilmore requests dismissal of the indictment. *Id.* at 8.

    B.    *Government's Response (Doc. 30)*

In its Opposition to Defendant's Motion to Dismiss, filed on August 1, 2023, the United States contends that *Counterman* is inapplicable to Gilmore's case because 18 U.S.C. § 115(a)(1)(B) includes a specific intent requirement, the indictment tracks the language of the statute, and the indictment states that Gilmore willfully and knowingly threatened to murder the official. Doc. 30 at 5.

    C.    *Magistrate Judge's Report and Recommendation (Doc. 32)*

In the report and recommendation, filed on August 11, 2023, Magistrate Judge Sneed recommends that the motion to dismiss the indictment be denied. Doc. 32. The Magistrate Judge concluded that the indictment set forth the essential elements of the offense charged. Doc. 32 at 1-2. Magistrate Judge Sneed found the *Counterman* case inapplicable because, as opposed to the Colorado statute at issue in *Counterman*, the statute at issue here, 18 U.S.C. § 115(a)(1)(B), explicitly includes an express subjective *mens rea* component. *Id.* at 3–4. Thus, the Magistrate Judge concluded that indictments tracking § 115(a)(1)(B)'s statutory language do not suffer from the same issues addressed and resolved by *Counterman*. *Id.* at 4 (citing *United States v. Yu*, No. 22-cr-208, 2023 WL 4687970, at *17 n.26 (E.D.N.Y. July 21, 2023)). After considering the indictment against the language of the statute, the Magistrate Judge found the indictment sufficient because it tracks the language of the statute and includes all necessary components to put Defendant on notice of the time, place, and conduct involved in the charge. Further, Magistrate Judge Sneed noted the indictment specifically mentioned a willful and knowing threat. *Id.* at 3. The Magistrate Judge found § 115(a)(1)(B) constitutional as applied to Gilmore.

    D.    *Defendant's Objections to the Report and Recommendation (Doc. 37)*

On August 25, 2023, Gilmore filed his objections to the report and recommendation. First, he argues the Magistrate Judge erred in finding *Counterman* inapplicable. Second, he argues the Magistrate Judge erred in relying on the indictment's language that Gilmore threatened the victim "willfully and knowingly"

4

because such language is surplusage and can therefore be ignored as unnecessary. Doc. 37 at 2.

Gilmore acknowledges that § 115(a)(1)(B) expressly provides for a *mens rea* requirement, but he submits that the requirement is not related to the Defendant's understanding of his statements' threatening character, which is what *Counterman* requires. *Id.* at 4. According to Gilmore, the "with intent to impede, intimate, or interfere with" and "with intent to retaliate" language in § 115(a)(1)(B) does not provide for the specific subjective intent requirement that satisfies *Counterman*. *Id.* at 4–5. Gilmore further asserts that the "willfully and knowingly" language contained in the indictment, which does not appear in the statute, is surplusage that cannot be used to "save the statute from constitutional infirmity." *Id.* at 2. Thus, Gilmore argues the Magistrate Judge should not have relied upon it. Gilmore maintains that the statute is unconstitutional as applied to him because it contains no requirement that a defendant understand his statements' threatening character and the surplus language in the indictment cannot create such a requirement when it is absent from the statute. *Id.*

  E.  *Government's Response (Doc. 39)*

In its response to Gilmore's objections, the United States agrees with Magistrate Judge Sneed's report and recommendation, including its finding that *Counterman* is inapplicable to this case because § 115(a)(1)(B) includes a specific intent requirement. Doc. 39 at 1.

5

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. The district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id*. The objections to a magistrate judge's recommendation and report must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019).

## III. DISCUSSION

In ruling on a motion to dismiss an indictment, a district court may review only the "face of the indictment and, more specifically, the language used to charge the crimes. It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (internal citation and quotation marks omitted). Even within this limitation though, "[i]t is perfectly proper, and in fact mandated, that [a] district court dismiss an indictment if the indictment fails to allege facts which

constitute a prosecutable offense." *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983).

The Eleventh Circuit articulates a three-part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

*United States v. Steele*, 178 F.3d 1230, 1233–34 (11th Cir. 1999) (citation and internal quotation marks omitted). An indictment will be found defective if it fails to adequately apprise the defendant of the offense charged. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). An indictment is generally sufficient if it "set[s] forth the offense in the words of the statute." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Adkinson*, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment "need do little more than track the language of the statute"). If an indictment tracks the language of the criminal statute, it must include enough facts and circumstances to inform the defendant of the specific offense being charged. *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003). An indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime." *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983).

The indictment here charged that Gilmore:

> Willfully and knowingly did threaten to murder a Federal law enforcement officer, with intent to impede, intimidate,

7

and interfere with such law enforcement officer while engaged in the performance of official duties, and with intent to retaliate against such law enforcement officer on account of the performance of official duties, to wit, Dempsey Emmanuel Gilmore threatened to murder Assistant United States Attorney S.B. for the Middle District of Florida. In violation of 18 U.S.C. § 115(a)(1)(B).

Doc. 1.

Thus, the statute under which Gilmore is charged provides:

(a)(1) Whoever …

(B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,

with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115(a)(1)(B).

The Court agrees with the Magistrate Judge that the indictment adequately advised Gilmore of the offense charged and that the *Counterman* holding is inapplicable. As discussed at the oral argument, the facts underlying *Counterman* and the statute at issue in that case are much different than the circumstances and statute here. As explained by the Magistrate Judge, *Counterman* involved a Colorado stalking statute[1] that lacked a subjective mental state requirement. In contrast, the statutory

---

[1] The Colorado statute made it unlawful to "[r]epeatedly … make[] any form of communication with another person" in "a manner that would cause a reasonable person to suffer serious emotional distress." *Counterman*, 600 U.S. at 70 (quoting Colo. Rev. Stat. § 18-3-602(1)(c) (2022).

provision at issue in this case, 18 U.S.C. § 115(a)(1)(B), specifically includes a *mens rea* component.

> In *Counterman*, the Supreme Court discussed true threats as follows:
>
>> True threats are "serious expression[s]" conveying that a speaker means to "commit an act of unlawful violence." [*Virginia v.*] *Black*, 538 U.S. [343,] 359, 123 S.Ct. 1536 [2003]. Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat, as this Court recently explained. *See Elonis v. United States*, 575 U.S. 723, 733, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015). The existence of a threat depends not on "the mental state of the author," but on "what the statement conveys" to the person on the other end. *Ibid.* When the statement is understood as a true threat, all the harms that have long made threats unprotected naturally follow. True threats subject individuals to "fear of violence" and to the many kinds of "disruption that fear engenders." *Black*, 538 U.S. at 360, 123 S.Ct. 1536 (internal quotation marks omitted).

*Counterman*, 600 U.S. at 74. The Court goes on to recognize that "the First Amendment may still demand a subjective mental-state requirement shielding some true threats from liability." *Id.* at 75. This is because the First Amendment requires courts "to protect some falsehood in order to protect speech that matters." *Id.* at 76. First, unlike the Facebook posts in *Counterman*, Gilmore's threat here was an unequivocal "I am going to have you killed." Second, whereas the Colorado statute contained no *mens rea* component, section 115(a)(1)(B) includes specific intent.

The trial court in *Counterman* analyzed the true-threats issue using an "objective reasonable person standard." "Under that standard, [Colorado] had to show that a reasonable person would have viewed the Facebook messages as threatening." 600

9

U.S. at 70. On *certiorari* review, the Supreme Court held that the First Amendment requires proof of a defendant's subjective mind-set in true-threats cases and that a recklessness standard is enough. *Id.* at 72–73. Because the Colorado statute applied an objective standard of whether a "reasonable person" would understand defendant's statements as threats, the *Counterman* Court found that statute ran afoul of the First Amendment. *Id.* at 82. In contrast, section 115 does not apply an objective standard, but instead has a specific scienter requirement, and therefore it differs from the Colorado statute. Thus, the problem that arose in *Counterman* does not exist with the statute here, and *Counterman* is inapplicable. Section 115(a)(1)(B) is not unconstitutional as applied to Gilmore. *See United States v. Veach*, 455 F.3d 628, 633 (6th Cir. 2006) ("Not only does § 115(a)(1)(B) require the government to prove beyond a reasonable doubt that the defendant threatened certain action against a government official but also that the defendant made such a threat for the specific purpose of interfering with the performance of official duties or of retaliating for the performance of such duties.").

As for Gilmore's argument that the indictment contains surplus language of willingly and knowingly, the result does not change as *Counterman* found that a recklessness standard applies. "In the threats context, it means that a speaker is aware that others could regard his statements as threatening violence and delivers them anyway." *Counterman*, 600 U.S. at 79 (quoting *Elonis*, 575 U.S. at 746 (Alito, J., concurring in part and dissenting in part) (internal quotations marks omitted)).

## IV.  CONCLUSION

After careful consideration of the Report and Recommendation of the Magistrate Judge and the Objections thereto, in conjunction with an independent *de novo* examination of the file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted and the Motion to Dismiss denied. Accordingly, it is now

**ORDERED:**

(1)  The Report and Recommendation of the Magistrate Judge (Doc. 32) is adopted, confirmed, and approved in all respects and is made a part of this Order for all purposes, including appellate review.

(2)  Defendant Gilmore's Objections (Doc. 37) are overruled.

(3)  Defendant Gilmore's Motion to Dismiss (Doc. 27) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on February 22, 2024.

*[Signature: Charlene Edwards Honeywell]*
Charlene Edwards Honeywell
United States District Judge

Copies:
Counsel of Record
Unrepresented parties, if any
United States Magistrate Judge Sneed